The second case on our call is number 127810. That's People's State of Illinois v. Teranza Jones. Agenda number 11. Counsel for the appellant. Good morning, Your Honors. Counsel. May it please the Court, I'm Darrell Lohman, and I represent the appellant in this case, Teranza Jones. The primary issue facing this Court is whether it's permissible for the lower court to affirm a conviction of Mrs. Jones for the presence of two bullets buried in the glove box of her car under the owner's manual and a stack of other papers. The car that she shared with her husband, who was a legal Floyd cardholder and a gun owner in this State, while she herself was not one, the car contained no firearm, however, just the two bullets that were buried in the bottom of the glove box. And the State does not contend that Mrs. Jones is the person who put them there. The facts of the case are, I'm sure Your Honors are aware, are very clear, but for the benefit of our guests, Mrs. Jones was subject to a traffic stop. The officer searched the car over the course of the better part of an hour and eventually found the two bullets in the glove box. He brought the bullets back to Mrs. Jones and said, those are my husband's bullets. And in fact, the traffic stop occurred so close to Mrs. Jones' house that her husband was awakened by the flashing lights from the police car, came to the scene and showed the officer his Floyd card and said, these are my bullets. We share this together. I take this car with me when I go to visit family in East St. Louis. I responsibly separate my handgun when I'm transiting from my ammunition. I keep the clip, perhaps a box of ammunition in the glove box. I keep the handgun itself in the trunk. And what obviously happened in this case, and I don't think the State disagrees, is that when you remove the bullets from the glove box, two of them fell out. Now, how many of us could confidently identify every single item in our glove box? This is especially difficult when you share the car with another individual. I'm sure some people have very tidy glove boxes. I'm not one of them. To me, the glove box in my car is no different than the junk drawer in my house. Things are placed in there, dropped in there, forgotten for months, for years. I cannot, if you ask me today, on my life, to give you a list of everything in my junk drawer or my glove box, I cannot do it. I do not in any meaningful sense know what is in that glove box. And that's the issue here today. That's the issue here today is the issue of constructive possession, correct? Yes. What if these were drugs? This Court's and lower courts' case law concerning drugs or handguns are largely identical. They're treated as contraband. The issue is knowing possession, whether you knowingly possess a gun or, in this case, firearm ammunition or possess heroin or cocaine. With respect to the mens rea, which is the issue before this Court and the issue at trial, the case law is largely the same. Under the appellate court's reasoning, though, a person seems to be automatically charged with knowledge of the existence of anything found in his or her car. Yes, that's definitely the major problem in this case, is that essentially what the States are arguing for is a strict liability application of the law, which is contrary to the legislative intent, clearly, or perhaps a negligence standard, because they spent a lot of time talking about what she should have known, that she had some invented duty to search her car every nook and cranny to see if there's any bullets in there, based simply on the fact that she knew that her husband brought his gun with him when he traveled to East St. Louis and then removed it from the car and put it back inside the house when he returned home. Again, I don't think there's any dispute, and I'm sure the State will correct me if I'm wrong, that that's – that explains the presence of the bullet. The State has offered no other explanation. There's no contention that Mrs. Jones had two bullets and nefariously placed them in her own glove box, or that it's analogous to a drug courier case where she's a bullet courier, and she's trying to transport these bullets somewhere else to sell them. Those are not the facts of this case. This is far more – I want to talk about the law of constructive possession. There's lots and lots of cases of constructive possession where people have been convicted, the convictions have been upheld, where there have been found counterband in a car. How is this any different than any of those other cases? Well, there's cases both ways, respectfully. Pardon? There's cases both ways. So in some cases, of course, it's affirmed. In other cases, it's not. And it hinges on with the actual central element in this case. It's not just constructive possession. It's knowing possession, which is the language in the statute. So there are cases – Are there any other cases where, for example, a handgun is in the glove box where the defendant has been convicted of constructive possession? Where it's been reversed, you mean? No. Where it's been affirmed. Oh, where it's been affirmed. No. Not without some indication. In the State of Illinois, where someone has been found guilty and it's been affirmed under constructive possession of a contraband in a car, for example, in a glove box, there are no cases that have done that? If that's all the evidence in the case or if there's additional evidence showing that there's some reason to believe that the defendant was aware that the contraband was present in the car. That's the important distinction here. So there are numerous cases that go both ways based on the evidence in the case. There's a recent case from this Court, People v. Wise, which I'm sure you're aware. But other cases cited in my brief, People v. McIntyre, the appellate court reverse where the driver of the car did not know. There was no evidence that the driver knew about the handgun that was concealed in the car. People v. Hampton, another Second District case. So there are cases going both ways. They hinge on the facts of the case. And the facts of this case are – The court found there was constructive possession. How are those cases different factually from this case? I can't off the top of my head, I'm sorry, speak to the facts of a case where the defendant lost. I'm sorry, I haven't prepared that today. But I can speak to the facts of this case. And under the facts of this case, there was no basis provided by the State to indicate that she did know that the handgun was in the car, which is the issue. The issue is knowing possession. And, again, there's also a question about what does knowing possession mean? Knowing possession means that she was consciously aware that the bullets were in the glove box, and I don't think there's really any argument that she was consciously aware of that fact. Now, the definition in the statute and in the IPI continues. Consciously aware includes an awareness of the substantial probability that, under the facts of this case, the bullets were in the glove box. Note, it's not strict liability. You're not just tasked with the knowledge implicitly. It's not a negligence standard. It's not even a probability standard. It's a substantial probability, which is consistent with just what do we mean when we say consciously aware? What do we mean when we know knowing? Significantly, of course, the jury did not receive the IPI in this case. They specifically asked the Court for a definition of knowing and were shut out. The Court did not issue the instruction. And under this Court's case of People v. Childs and numerous other cases, there's two problems with that. On one hand, the Court has the duty to instruct the jury when it asks. And also, on the other hand, the jury is entitled to receive that definition. It's clear under the facts of this case that the jury was struggling with the central issue in this case, knowing possession. Not just constructive possession, but what did she know? What was she consciously aware of? Mr. Ullman, didn't the Court find in, with regard to just two facts, that the defendant correctly guessed the bullets belonged to her husband when asked about them? And the other fact that the Court used was the defendant's husband testified that she knew he transported his firearm in the vehicle. Those are the only two facts that we know in the record here that she should have known or she knew. That's essentially what the appellate court said. But those facts and other facts in the appellate court opinion are not correct. They're not supported by the evidence. The husband testified, the procedure I discussed earlier, that he would, when going to St. Louis to visit family, he'd bring his gun. He'd store the ammunition separately in the glove box. He did not testify that she knew that. Though Mrs. Jones testified in this case, she did not testify that she knows that. She's not a gun person. The State cites the case of Pupil v. Hammer, where you have a husband and a wife, and the husband's a gun person, the wife's not a gun person. And the officers went into the house, and they found the guns, and they didn't charge the wife because they weren't her guns, but they charged the husband because he didn't have a FOID card. The difference in this case is the husband in this case has a FOID card. They couldn't charge him, and they shouldn't have charged her either. It's frankly outrageous that she was charged under the facts of this case and that she stands before you convicted of a felony because her husband accidentally left two bullets in the car. The husband did testify that the defendant knew he transported the gun in the car, correct? Yes. And he testified to that. And then the way that, again, this is all phraseology, but the way the appellate court put it was that the defendant immediately identified the ammunition as belonging to her husband, tending to show that she knew it was there. Right. And that's what they looked at. And, again, you cited the standard of substantial probability. That is a standard, but we also have to bring that back to the Collins standard. Any rational trier of fact could have found someone guilty under these facts. Well, Your Honor is referring to what the appellate court opinion says, as I mentioned earlier to your fellow, Justice Burke. That's not supported by the evidence. That's what the appellate court's opinion says. But if you look at the actual testimony, this only came up at the very end of the arresting officer's testimony. And the prosecutor, just as a last question to wrap up, said, quote, when you told the defendant that she was going to be arrested on possession of the ammunition, did she make any voluntary statements to you? And the officer replied, she did. She said that the ammunition was her husband's. No further questions. There's nothing about how it was. She didn't seem surprised, how she immediately responded that she'd leapt at the conclusion. There's dash cam video that was provided in discovery to the attorneys in this case, but it's not in her boots. We don't have the timing that the appellate court ascribes to these statements is not present in the officer's testimony or anywhere else in the record. Okay. So I think it's important to point out that she didn't leap at that. Another important thing, again, similar to the husband and wife in Hammer or, I mean, any of us really, if something belongs to a husband and it's associated with a husband, such as the guns in Hammer or the bullets in this case, it doesn't require a pause. It doesn't require any thought to say, what is that? Whose boxer shorts are those? They're my husband's. Whose size 6 shoes are those? They're my son's. They're not mine. I wouldn't fit into those. I don't have bullets. I've never had bullets. I've never fired a gun. I don't wear size 6 shoes. I don't wear boxer shorts. There's no – the timing is not, on one hand, not in the record, and, two, not important that the bullets were in the car. Whether she was consciously aware that they were in the car, yes, it's possible. We know it's possible because they were in the car, right? And who decides that? I'm sorry, Your Honor? And who decides that? Whether – you're saying maybe she knew, maybe she didn't. Who decides that? The jury decides it after being properly instructed. It brings me to my second point that I mentioned earlier. They were not. The jury struggled with this issue. I mean, in a broad sense, knowing could be an entire topic of a philosophy class. Let's talk about court, sir. So you're saying – what is your legal argument? They received all the proper instructions, correct? No. No? The jury was never instructed on the definition of knowing, even though they specifically asked for that instruction. And is there – why are they – why was it errored not to instruct them on the definition of knowing? What case are you citing? People v. Childs, which is a decision of this court. In which every question that's asked by a jury must be answered? Is that your position? If there is an IPI, yes, absolutely. Even the rules of this court. The Supreme Court rules itself – I don't have the number off the top of my head, but it's cited in my brief – that if there's an IPI, it must be given. Now, does it have to be given in the initial packet? No. If you look at the committee comments of the one IPI at issue in this case, the committee comments are clear that they don't necessarily have to be given in the initial packet. And it cites a case called People v. Powell that says, if the jury is okay with this, perhaps under the facts of any given case, it's fine. But once the jury asked, yes, under People v. Child, this court said, not only does the court have a duty to instruct the jury, but also the jury is entitled to receive that instruction. So what your argument really is, is that because this jury wasn't instructed in having her know, did she know about the bullets, it really leaves speculation. It's like they just are guessing whether she knew or not because they weren't instructed to answer the question. That's right. We know that they did not have any basis to make this conclusion. As I was saying earlier, you could teach an entire philosophy class about what it means to know something. It's not within the ken of the average juror, but it's certainly not within the ken of these particular jurors because they asked. They said, please tell us. What does it mean? What does knowing mean? And they were not instructed. And that's error. So what happens? Let's talk like lawyers. Sure. The jury asked for a definition of knowing. That's right. And trial counsel agreed not to give a definition, correct? Ultimately, yes. All right. So what's the framework we're talking about here? Ineffective assistance of counsel? It's definitely forfeited. In my briefs, I've argued ineffective assistance of counsel, and I've also argued both prongs of the plain error doctrine. So, you know, let's put all this in some context. Sure. What is your argument? Is it sufficiency of evidence? Is it an instructional error? Is it plain error? Is it ineffective assistance of counsel? What framework should we be putting on your argument? Well, the briefs contain two arguments. One is sufficiency of the evidence. The second is the jury instruction issue. They're somewhat conflated in the sense that how can an improperly, incompletely instructed jury be relied on to correctly reach the central issue of the case? So there are two alternative grounds. As Your Honors well know, if this Court finds that the evidence was insufficient, it should reverse outright. On the second issue, if it finds that either counsel was ineffective or it's plain error under either prong to incorrectly instruct the jury when they ask for the instruction, then you still need to reverse, but it goes back for a new trial, hopefully with the correct instructions. Explain plain error to me. Plain error. Explain both, ineffective Assistance of Counsel and also plain error. Okay. I'll begin with plain error, since Your Honor mentioned it first. As this Court well knows, most recently in Pupil v. Jackson and Pupil v. Herron, in numerous, numerous cases, there's two prongs of the plain error doctrine set forth in Rule 451c. The first prong is that this course, again, where there's been a forfeiture, where there's been an error, this Court will reverse if the evidence is close, regardless of the seriousness of the case. And under the second prong, this Court will reverse if the error was serious, regardless of the closeness of the case. And as I've argued in my briefs, either one of these can be applied to this case, has been applied in previous cases, certainly with respect to the closeness of the evidence. Even if this Court disagrees with argument one, it's exceptionally close. In the motion for new trial, even the trial judge agreed that I think the, quote, the ammunition evidence was a close call. I think it was arguably thin. That's on page 171 of the recorded proceedings. So regardless of how Your Honors feel about the first issue, we can urge you to reverse outright. Under the second issue, it is first prong plain error. And it could also be second prong plain error for the reasons of the brief, because this is a central issue. This is the only issue. Kagan. Failure to respond to a question from the jury is a second prong? Not necessarily, but under circumstances such as this, where there is an IPI exactly on point that goes to the central issue of the case, yes, absolutely, the precedents do allow this Court to reach under second prong. But again, these are all just alternative bases to reach, which is admittedly a forfeited issue. There is also ineffective assistance of counsel. Your Honor references the discussion at the jury instruction, I guess it's a conference, after the note was received by the jury. Initially, both parties told the Court, you have to give this instruction. It says they asked for it, you have to give it. The defense is true that at some point there was some disagreement about what should be given, right? Under the committee comments, the instruction has to be tailored to the nature of the offense. There's two paragraphs. One applies under certain circumstances, two applies under the other. But it's all clearly explained that the IPI commission did an excellent job in this case, saying when to give paragraph 1, when to give paragraph 2. The State said let's give paragraph 1. The defense came back and they weren't sure. They wanted both paragraphs, which is clearly wrong. Again, it would have taken five seconds to read the committee comments and see clearly paragraph 1 applies in this case. Then ultimately the State suggested let's just essentially not give the instruction and tell them to go with what they understand. The State was making a strategic decision saying we don't want to give this instruction. If defense counsel is not going to go for it, we're going to propound. The answer is don't give the instruction. And again, defense counsel went along with it. But defense counsel said that, I don't know if it's a man or a woman, but he or she really was concerned with the second part of that first paragraph, that last phrase that we talked about a little bit earlier. I mean, clearly, consciously aware, the attorney would have loved to have argued that and did argue that, but didn't want to be saddled with this substantial probability issue and how that might lead the jury down the path of conviction. And so you're seeing there's – I put myself in the shoes of the trial judge and say, well, here's an attorney who's making a fairly reasonable argument not to give it in total. What do I do? And now you're saying that's error. And that's not only error. That's second-pronged blame error. I mean, frankly, regardless of the position of the defense attorney, under Childs, the judge does have a duty to give the instruction. The IP – as Your Honor's well known, the IPI committee labors to come up with these instructions. Presumably, they're – based on the previous case, they're going to have to labor to come up with another instruction based on what the Illinois statutes say. It's the job of the court to give the instruction. While it's understandable why there was some confusion or not wanting to give it in this case, that – the framework of that is forfeiture. It's no different than the Heron case where the State proposed an instruction and the defense counsel just said, okay, I have no objection to that instruction. Of course, that's how – that's how jury instruction conferences go, right? One party or the other proposes the instruction. The vast majority of them are not objected to. When they're not objected to, we look at who propounded the instruction. In this case, it was the State propounded the answer. We're not going to give an answer. And if defense counsel goes along with it, that's forfeiture. That's subject to plain error if it's closely balanced. Again, if Your Honor is not willing to find second prong, that's fine. It's clearly first prong plain error, though, because the evidence in this case, one, as I argue in argument one, is not sufficient to convict. But if it is somehow sufficient to convict, it's certainly closely balanced. So therefore, under the first prong of plain error, this Court can reverse. And again, I would disagree that the analysis of the defense attorney was any sort of strategy, because it's clear he didn't even read the committee comments. I mean, we're talking about one page here. There's two paragraphs, the committee comments. We've all seen them. If you read down the committee comments, it's plain as day what should be issued, when it should be issued. Both parties acknowledged at the outset the definitional instruction exists, and that it has to be given if the jury asked for it. They asked for it. They struggled with this issue. It's the central issue in the case. And I'm arguing that they got it wrong. Part of the reason they got it wrong is they were never instructed on it. And were they given a general instruction? Didn't the trial court say the, what is it, common meaning of knowingly? Yes. And again, I would refer this Court to its prior decision in Childs, where this Court said, quote, The issue is whether the instructions were clearly understandable to the jury. It's a fair statement. Apparently, they were not. The trial court did respond to the jury's query and instructed them to rely on the plain meaning of knowingly. So he didn't just not respond. He gave them an instruction to rely on the plain meaning of knowingly. Correct? There was a written question and a written answer. The written question was, what's the definition of knowingly? And the written answer was, the word knowingly should be given its plain meaning within the jury's common understanding, which they don't have one. That's why they're asking. Again, referring this Court to the quote in Childs. The issue is whether the instructions were clear. I'll bring it up later. Thank you, Your Honors. May it please the Court. Counsel. I'm Assistant Attorney General Josh Schneider on behalf of the people of the State of Illinois. I'd like to start by clarifying what claims are properly before the Court for its consideration.  and we have a lot of evidence, We have no dispute. There is a question raised about the sufficiency of the evidence. But the question of plain error is not properly before the Court. And the reason it's not properly before the Court is because it's not merely a question of forfeiture. It's because it's an invitation to have given the response that defendant now claims is erroneous. And that bars plain error review. And so the only way to reach the alleged instructional error is through the framework of ineffective assistance of counsel. So very briefly on the issue of invited error. This Court has been very clear. Plain error review is not available for errors or alleged errors that are invited by counsel. And the reason is you can't ask the Court to do something and then complain when it doesn't. And this case is a very clear case of invited error. The jury sent out its question. What is the definition of knowingly? The Court and the parties put their heads together. They're talking about how to respond to this question. And actually, it's the Court that says, well, I think maybe we just tell them it's look to the common meaning of the term. And it drew that conclusion based on the comment to IPI 5.01B. The prosecution says that it would be fine with that. Then the Court turns to defense counsel. And defense counsel says, yes, I'd rather just have the jury define it for themselves, Your Honor. That's at page R139. The Court then prepares some language to propose to the parties to communicate to the jury, floats it to counsel. And counsel says, quote, I agree with that. That's R140. The Court then has a copy of that response printed out and given to counsel to look at. And counsel says, I agree with this, Your Honor. So if that is not affirmatively acquiescing to the response that the Court gave, then nothing is. And this Court in Averitt in 2010 said on essentially indistinguishable facts that it was invited error that barred plain error review. The Court said there where defense counsel and the prosecutor assisted the trial court in drafting its response to the jury's question, and counsel then agreed to the trial court's answer, that was invited error and not subject to plain error review. The appellate court has followed this Court's lead repeatedly in cases that we cite in our brief at page 37, Peel, Lawrence, Correga-Hernandez. So plain error is not properly before this Court. It's either sufficiency or ineffective assistance of counsel. Those are the claims that are really we're looking at. Since we just went through counsel's agreement to this, I'll start with the ineffective assistance claim. Counsel made a strategic decision, plainly, to ask that the Court direct the jury to the common understanding of the term rather than issue IPI 5.01B. And this is one of the rare cases where we actually have some record evidence about counsel's deliberative process. Counsel tells the Court in the conference, I'm really worried about this second sentence, 5.01B, where it's talking about substantial probability. And the Court and the prosecutor immediately understand what counsel's concern is. So they say, yes, that awareness of a substantial probability that the ammunition was in her glove compartment does have sort of a flavor of recklessness. And so they put their heads together to try and come up with a way to address counsel's concern. Counsel was perfectly reasonable in not wanting IPI 5.01B, even if it should have been given. Counsel had good reasons not to want it given because it was a less favorable standard for his client. It is easier to find someone knowingly possessed ammunition in her glove compartment if one doesn't have to find she was consciously aware that it was there, but only has to find that she was aware of the substantial probability that it was there. And so counsel made a reasonable strategic decision. This Court has been very clear, and Strickland itself is very clear, that we give great deference to counsel's strategic determinations.  And Petitioner or, I'm sorry, Defendant was not prejudiced by that strategic decision either because, again, the definition under the IPI is less favorable. And so had that IPI instruction been given, there was likely a greater chance that she would have been convicted than otherwise. The IPI, again, is conscious awareness that the ammunition was in her glove compartment or awareness of a substantial probability that it was there. Counsel, what about this argument that, look, the jurors wouldn't have asked the question if they had a common understanding of the guilty? So there was no hope at all. It appears, and I think this is a reasonable interpretation of the question, by the Court and both the prosecutor and the defense counsel seemed to have understood the question to be asking, does this mean something different than it does in our usual day-to-day you're in court, right? Does this mean you have some sort of special legal definition? And so they directed the jury to apply its understanding of the term in common usage. Now, the Court's answer was not like the answers in Ayala and Sperry and Lowry, where the Court said, you've received your instructions. Essentially, go back and do your job. Those sort of discouraged follow-up by the jury. So here, if the jury said, what is the definition of knowingly? And the Court said, the term should be given the plain meaning in the jury's common understanding. And the jury had no follow-up question. Then presumably it was satisfied with that answer. But again, there's no way to show that there's a reasonable probability that a defendant would have been acquitted had counsel not made the strategic decision because fundamentally the IPI instruction gave a less favorable standard for the defense. Under the common definition, if you look at any dictionary you care to look at, and we provide a number of them, knowingly doesn't include knowing that there's a good chance or a substantial probability that something is the case. It's either conscious awareness or shading the other way has connotations of intent or deliberateness. So I guess the analogy here would be that if a person had been charged with knowing murder and the jury was instructed on intentional murder, there's no reasonable probability that they would have been acquitted had the proper less demanding mens rea instruction been given because they were convicted under the more demanding standard. And so that leads me to the sufficiency of the evidence. There's no dispute that when defendant was stopped in her car, she had been convicted of a felony. And there's no question that when she was stopped, there was ammunition in the glove compartment of her car. The only disputed fact at trial and now is whether she knowingly possessed the ammunition that was in her glove compartment, meaning that she had immediate and exclusive control over the glove compartment and that she was either consciously aware that there was ammunition inside of it or was aware of a substantial probability that there was ammunition inside of it.  In the case of the defendant's proposition, drawing all reasonable inferences in the prosecution's favor, the evidence was sufficient for a rational jury to find that she knowingly possessed the ammunition in her glove compartment as a felon in violation of Section 24-1.1a1. Very briefly on the standard of review, defendant in her brief argues that we don't review the sufficiency of the evidence using the sufficiency standard. Instead, we should review it de novo, but that is incorrect. The case that the defendant cites for that proposition, although they sort of nominally concern sufficiency challenges, they concern sufficiency challenges that turned on the interpretation of statutory language, not the interpretation of the evidence at trial. And the perfect example of this is in Ray Ryan B. There, the Respondent had a stipulated bench trial and on a charge that he had enticed or persuaded the child to remove clothing in violation of the statute prohibiting the sexual exploitation of a child. But the stipulated evidence was that he asked the child to remove clothing. And so the question was whether the fact that the stipulated evidence showed, asking, was the fact that the statute required it to show, enticing or persuading. And so because that ultimately was a question of statutory interpretation, the Court, of course, reviewed it de novo. But here, the Court's not being asked to interpret the statute. All we're asking is, was the evidence of the requisite mens rea sufficient to prove that mens rea? And the inquiry there, then, is to look at the evidence of that mental state and ask, is that sufficient under the sufficiency standard? And here it was. First, the evidence was sufficient to show that Defendant had exclusive and immediate control over the glove compartment because it was her car. She was driving it, and there's no evidence there was anyone else in the car. Now, Defendant argues, I think for the first time in her reply brief, that she did, in fact, have a passenger. And she cites page R101 of the record for that proposition. But when we look at page R101, that is maybe not an entirely fair characterization of the testimony. The officer is being cross-examined and asked two questions. The first question is, now, all your interactions were recorded on your car squad camera, is that correct? Yeah. Second question, and there was someone else in the passenger seat of that vehicle as well, is that right? Yes, there was. And so the passenger seat that we're talking about here in context seems pretty plainly to be the passenger seat of the squad car in which the interactions in the back of the squad car were taking place. To the extent that – and I think a good reason to think that is when we look at the opening statements, when we look at the closing arguments, when we look at the direct and cross-examination of Defendant herself, there's never a mention of a passenger in her car. And that would have been an enormously significant issue for the defense had there been one, because, of course, whether she has immediate and exclusive control of the glove compartment would look a lot different if there was another person sitting directly in front of the glove compartment of that car. But to the extent that that brief passage is susceptible to different interpretations, of course, under the sufficiency standard, the Court is compelled to interpret it in the light most favorable to the prosecution. So there's no question she possessed the ammunition. Now we'll turn to did she knowingly possess the ammunition. And as is often the case, the question of the mental state turns on inferences drawn from the facts in the record. Here we know that she was driving her own car. She was by herself. That supports an inference that she was aware of the contents of her glove compartment. Certainly some people are not. That's another inference a person could draw. But we're compelled under the standard to draw the inference in favor of the prosecution as long as it's reasonable. And it's certainly not an irrational inference that a person knows what's in the glove compartment of a car. So when somebody's in a situation like this, then the person's automatically charged with knowledge of the existence of anything found in his or her car? No. And I don't understand that to have been what the appellate court was suggesting either. A person has knowledge of something that's in her car. Isn't that what the appellate court said, though? I don't believe so, Your Honor. I believe they said that when a person – well, so on the facts of this case, the fact is here's this person. She's in her car. It's – the contraband is in the glove compartment. It's not hidden somewhere where we might have a reason to think she doesn't know about it. And we have specific reason to infer that she knew that ammunition in particular was in the glove compartment because when she's told you're being arrested for ammunition, she doesn't say what are you talking about or what ammunition or where. She says that belongs to my husband. She knows her husband drives the car and has ammunition in it. So it doesn't mean that she knew that it was there. It's – it's certainly true that that is also an inference that could be drawn from the evidence. But under the standard, it's not a question of – That she knew, actually knew, or there was a possibility. It's either that she was consciously aware that it was there or that – Or it's really – Or that there is a substantial probability that it was there. That's the statutory definition of knowingly. So all that the evidence needs to be sufficient to show is that she was aware of a substantial probability the ammunition was there. And although she asks this Court to draw the inference that she just assumed that if there was ammunition in the car, then it must have belonged to her husband and I think they sort of – 2 plus 2. I don't have a gun, so if there's a gun in the car, it must be my husband's, that sort of reasoning. But that is simply a reasonable inference that can be drawn. That is not the only reasonable inference that may be drawn. And under the Jackson sufficiency standard, we must draw the reasonable inference in favor of the prosecution. It's not a contest. We don't say which is the more reasonable inference. All that's required is that the inference in favor of the people has to be threshold of reasonableness. And this is actually – this case is a good illustration of why – Isn't the word knowing really important? It's because this liability was a charge and a penalty with it. So shouldn't the trier of fact absolutely know that that person knew who was charged? Well, that has to do with the question of the jury instruction. The sufficiency question is an objective inquiry. Could a rational jury have found this evidence sufficient? And we would submit that a jury could. And, again, this is a case that really explains why the sufficiency standard works the way it does with viewing the evidence. It's a very favorable standard for the people. There's no question. I agree with you on that. But in this particular case, the jury wasn't instructed with the proper definition of knowing. Well, the – And that's the issue, because ultimately this woman was convicted. That's true. They were not given the IPI because counsel agreed that they should not be given the IPI. And the reason that counsel agreed to that was because the IPI would have made it more likely she would be convicted. So to the extent that there was an error in the definition of knowingly that was given, it was an error that inured to defendant's benefit in the weighing of the evidence. The reason – I don't understand how you can say that. I mean, knowingly or knowingly was a critical aspect of this case, the most fundamental critical aspect of this case, correct? Yes. The question was did she knowingly possess the ammunition. And so when they're not instructed on something that's so fundamental like this properly, doesn't that cast doubt on – you say the evidence is sufficient. Well, the evidence is sufficient given everything and given our standards. But when you don't have a definition of something that's so highly critical, doesn't that call into question the integrity of the conviction itself? No, for two reasons. First, I want to be very clear that the question about the instruction is irrelevant to the sufficiency inquiry. Oh, I understand that. There are two separate questions. I'm not disagreeing with the sufficiency of the evidence. I'm talking about in this case they didn't give a proper instruction on that one critical point. And that is a critical point in a case like this. Sure. And so the – again, first of all, the reason that didn't happen is because – and the reason counsel agreed it shouldn't happen is because the second basis on which a person could be found to knowingly possess something is if they are aware of a substantial probability that it's in their possession. So counsel reasonably did not want that definition given because I know there is a reasonable probability that I have a tire gauge in my glove compartment. I don't know for a fact that's the case, but that means – I know there's a substantial probability, rather, that there is a tire gauge in my glove compartment. That makes me – if that were a crime to have a tire – possession of a tire gauge, if I get in the car, I am guilty of that because I know that there – I'm aware of a substantial probability that it's there. But you don't know. Well, I do under the statute. Knowingly under the statute means that you are aware of a substantial probability. So it's speculation again. Well, it's not speculation. It's drawing inferences. So, for example, here we know that they've been married for – she and her husband, who has the gun and ammunition, have been married for about 10 years. We know that she – she knows that he transports his guns in the car. He says, whenever I transport my gun in the car to visit the children in St. Louis, I put the ammunition in the glove compartment. I have been married for about 10 years. It is remarkable how much my wife knows about my various habits, quirks, neuroses, and it's because she's lived with me for 10 years and is a reasonably observant person. So it is not an irrational inference for the jury to think, these people have been married for 10 years, they live together, they have children together, they share this car. We think that it – we think that if she knows he transports his gun in her car, that she's familiar with his habit on how he does that. It's not the only inference that a person can draw, but it's not an unreasonable inference, and that's all that's required in this case. I'm worried that if we agree with you in this case, what does that do to all the cases they're dealing with when there are two or three people who own the car, you know, they drive the car, and so they – because of that, they're aware all the time of anything possibly in the car unless it's some hidden in some kind of dark corner. They're just aware of everything, especially if it's in the glove compartment. Right. So that's actually – I think that that concern is not actually implicated by this case, because – so most of the cases where we see constructive possession being at issue is where, for example, there's more than one person in the car, or there's circumstances where – But it's knowingly. It's not constructive possession. It's what the person knew. Well, constructive possession – you can – knowing possession can be constructive. So constructive possession means that it's not physically on my person. It means I have immediate and exclusive control over the area where the contraband is. But you don't know the contraband's in there. No. I have to for it to be knowing possession. I have to either be consciously aware that it's in the glove compartment that I have control over, or be aware there's a substantial probability that it's there. That's the statutory definition of knowingly. Had the IPI been given, that's the definition it would be given. Every time I get in my husband's car, I'm supposed to know what's in his glove compartment, or be aware, or there's a probability there's something that shouldn't be there? No. So the question is extremely factually specific. So whether a person has substantial reason to believe that there is a particular contraband in any particular place turns on the facts and circumstances of that case. The cases that defendant cites are really good examples of how this works. Hampton, a defendant borrowed a car that he had never driven before, and minutes later – minutes – two or three minutes later, he's stopped by police, and they find a firearm in the glove compartment hidden in – I think it's in a sock. And the court said, you – there's insufficient evidence to find that the person may complete my response. There was insufficient evidence for someone to find that person, who had borrowed that car he'd never driven before, knew that the gun was there because there was no reason for him to know it was there. Where a person shares a car with one other person, and under these facts, she knows that he transports a gun and we confer knows that he transports ammunition, there is substantial probability that it's there. And a rational jury could believe that she was aware of that substantial probability. And so for those reasons, we ask that the Court affirm. Thank you. Thank you very much. Counsel in reply? Counsel, before we start with the first issue of sufficiency, what is our standard of review? The standard review, if the issues – if the facts are not in dispute, is de novo, as indicated by this Court in Pupil v. Smith. However, if this Court's not willing to go there – It can be, if the facts are not in dispute. If this Court is not willing to go that far, that's fine. It doesn't really change it. Under the regular standards of sufficiency, where the facts are in dispute, there still has to be enough evidence to prove that there was knowing possession. And here, there's simply not. Standard review. Is that the language we use for standard review? Or are we talking about the Jackson standard? We must resolve whether, after viewing the evidence in the light most favorable to the prosecution, any rational trial or fact could have found the essential elements of the crime beyond a reasonable doubt. Is that the standard review? I agree. The Jackson standard review is the law of this land and applies to the vast majority of sufficiency cases. It is true, however, that this Court has applied de novo review to sufficiency arguments in the past. I'm just answering Your Honor's question. I don't mean to belabor the point. It's not necessary. Even under the Jackson standard, the evidence just simply isn't there to show that she was consciously aware that the bullets were in the car. Okay. Very briefly, I'd like to get back to the second point, something I tried to get out in my opening and didn't quite get there. Rule 451A of this Court says that an IPA quote shall be issued unless it's an inaccurate statement of the law. The definition of knowing in this case clearly is not an inaccurate statement of the law. It just tracks the language of the statute. As this Court said in Pupil v. Childs, the issue is whether the instructions were clearly understandable to the jury. Apparently they were not or the jury would not have asked the question that it asked. That's page 231 of Childs. That's exactly what we have here. The jury was unclear what knowingly means. They went to the judge, said, please tell us, and they didn't get the answer they were entitled to. Now, returning now to the first issue. Well, let's stay on the second one just for a second. Sure. This counsel argued that plain error doesn't apply because it's invited error. Oh, correct. Your response. Yes. So invited error occurs where the defense attorney is the person who permits the error. So the classic examples are admitting an improper instruction or insisting on a certain defense be propounded or not be propounded. It's just a simple equitable doctrine. It makes perfect sense for this Court to say, if you go into court and submit the instruction yourself, you cannot then go up on appeal and say, I committed error by submitting that instruction myself. That's just simply essentially an exception to the plain error doctrine. That's true. It's not what happened in this case, however. Even counsel points out it was the court and then eventually the prosecutor who initially said, initially, which is the issue for invited error, we're not going to give the IPI. And it's true that defense counsel went along with that, just like defense counsel goes along with erroneous errors in numerous cases that amount to ordinary forfeiture that's subject to the plain error doctrine. Even this Court's, I would say, the leading plain error case that this Court issued, People v. Herron, was this sort of instructional scenario. The instruction was submitted not by the defense attorney, and the defense attorney simply said, okay, no objection, Judge. Again, this is what we see every day. There's jury instruction conferences. Somebody propounds it. You object or you don't object. Typically, you don't. There was no objection here. So therefore, it's not invited error. That's a very narrow equitable doctrine. And as this Court explained in Herron, it's narrow for a reason. It's narrow because this Court recognized, quote, forfeiture is a harsh sanction for a defendant whose attorney failed to raise the error in the trial court. So therefore, it should be limited. And that's why the plain error doctrine exists. Obviously, these things happen. So that's why we have ineffective assistance also. Yes, correct. The defendant's not left out in the cold. Exactly. There's three ways you can reach it. You can reach it under first-prong plain error, second-prong plain error, or ineffective assistance of counsel, all of which are raised in the briefs, probably before this Court at this time. Returning to the first issue, counsel mentions he knows he's got a tire gauge in his car. Why does he know that he has a tire gauge in his car? Because he put the tire gauge in his car. There's no suggestion that Mrs. Jones put the two bullets in her car. Counsel talks about competing and reasonable inferences. We have all of the evidence points to the husband accidentally left the bullets in the car. There's no even suggestion that she put the bullets in the car. His wife might know about his quirks, but his quirk isn't, I have a tire gauge located in my car. Well, it seems the position is, the request to the court is to find that if you have co-ownership of a car, two people drive the car, three people drive the car, for example, and you've got one person who uses drugs, then you're on notice, if you drive the car, that there might be a likelihood of drugs in the car. Would that be fair? Further, even further than that, the State's arguing that it's actually an affirmative duty to search the car and look and check to see whether there's drugs in the car. How much sufficiency of the evidence cases do you think this Court takes on? In a given term, not very many. I'd say probably close to zero. Yeah. So the reason for that is because they are so fact-specific, and they don't give us any major precedent, because they can always be distinguished on the facts. I mean, you would agree with that, wouldn't you? I agree in those cases, but I believe this Court took this PLA for a reason. Well, okay. And the reason being that this case does have broader implications, those implications being, as Justice Burke pointed out, if she takes her husband's car and he left his handgun in the glove box, forgot to take it out, she doesn't know that. She's not consciously aware that he left his handgun in the glove box. The State's essentially arguing for, if you affirm this, this is what the broader implication is, if you affirm Mrs. Jones' conviction, what you're saying is that Justice Burke was guilty of a crime. If she doesn't have a Floyd card, I don't know if that's true. She's guilty of a crime. I submit that she's not. Just another example, because there are many examples, which I'm sure Your Honors can clearly see. A 16-year-old borrows her dad's truck. He went on a hunting trip that weekend. He took his shotgun out of the car. He took most of the ammunition. One of the shells rolled under the seat. Look, she knew her dad went on a hunting trip. This is what the State's arguing. She knew her dad went on a hunting trip. Therefore, I'm fired up, frankly, because the fact that my client stands convicted in this case is outrageous. She's not a criminal in the same way that Justice Burke is not a criminal, in the same way that a 16-year-old who borrows her dad's truck is not a criminal, simply because. What happens when someone, the police come to an apartment and they search the apartment, and in one of the bedrooms they find drugs, and then they also find a lease in the defendant's name? Yeah. Have you ever seen a case like that? Sure. A case cited in the brief, Pupil v. McCarter. And what happens? In that case, the defendant was found guilty because there was a specific bedroom. And, Your Honor, I've seen many cases like this. The evidence in the bedroom is closely associated only with that person. For example, if there's a man and woman living in the house, they're not married. There's two bedrooms. One bedroom only contains men's clothing or a lease or a ---- How many other cases were the only evidence that the State presented was the covering of the drugs and a lease? And this Court, not this Court, but the appellate court has upheld those over and over again. Because there's an inference that can be drawn. There's an inference if it's multiple bedrooms and multiple people or if there's only one person. This is a shared car. This is not in dispute that she shared the ---- In that moment, does she have exclusive control over the car? Yes. Isn't that an element of substantial construction? It's not the only element. What we're focusing on here is knowing possession. Did she know? Was she consciously aware? Was there a substantial probability? The State argues that it's difficult. This is a bad standard for the defense. It's not. Knowing is a very high standard. This isn't a civil case. We're not talking about certainly not strict liability, although the State's argument calls into question, but not negligence, what she should have known. It's knowing. It's the highest standard right up against intent. It's not probability. It's not possibility. It's substantial probability. The evidence in this case simply does not rise to that level. And if it does, by affirming a conviction based on such scanty evidence, this Court opens the door to a wide variety of convictions based on totally innocent conduct. Thank you, Your Honors. Thank you both for your spirited arguments. This case, number 127810, People v. Savoy v. Carranza-Jones. Agenda number 11 will be taken under advisory.